# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**RONALD MARSHALL**                                        **CIVIL ACTION**

**VERSUS**                                                          **NO.  14-849**

**ROBERT TANNER, WARDEN**                          **SECTION "A"(2)**

## REPORT AND RECOMMENDATION

This petition for a writ of habeas corpus under 28 U.S.C. § 2241 was referred to

a United States Magistrate Judge for preliminary review, and if necessary, to conduct

hearings, including an evidentiary hearing if necessary, and to submit proposed findings

and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).[1]  Upon review of

the entire record, I have determined that a federal evidentiary hearing is unnecessary.  For

the following reasons, I recommend that the instant petition for habeas corpus relief be

**DISMISSED WITHOUT PREJUDICE** for failure to exhaust state required remedies.

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Ronald Marshall, is incarcerated in the B.B. "Sixty" Rayburn

Correctional Center ("Rayburn") in Angie, Louisiana.[2]  On April 1, 1998, Marshall was

charged by bill of information in Orleans Parish with armed robbery.[3]  The relevant facts

---

[1]Rec. Doc. No. 18.

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 4/1/98.

as determined at trial were summarized by the Louisiana Fourth Circuit Court of Appeal

as follows:

New Orleans Police Detective Calvin Brazley testified that on December 19, 1997, he received an anonymous tip by telephone that a man named Ronald Marshall had perpetrated a burglary at 2657 North Tonti Street in November 1997. After Det. Brazley found no police report on such a burglary, he proceeded to the address given, but found no one home. A neighbor informed him that the person who used to live there, Terry Hudson, moved to her mother's residence. Det. Brazley was unable to contact Ms. Hudson that day. Later, while going through paperwork, Det. Brazley came across information related to a shooting incident he had handled on December 11, 1997. The victim's name in that case was Ronald Marshall. Det. Brazley compiled a photographic lineup containing Defendant's photo, and subsequently contacted Ms. Hudson. Det. Brazley showed Ms. Hudson the lineup, and she immediately made a positive identification of Defendant's photograph. Det. Brazley testified on cross examination that Ms. Hudson reported to him that three men armed with guns broke into her home, and the defendant was one of them.

Terry Ann Hudson testified that on November 10, 1997, at approximately 8:30 p.m., she had just come home from the grocery store with her two children. She heard someone shaking the doorknob, and thought it was her younger brother. Ms. Hudson looked out of her peephole and saw two males on the pavement apparently passing by. She opened her door, and discovered one male on her porch. She asked him what he was doing, and stepped out of the residence. Ms. Hudson testified that the man brandished a gun once she was outside the door. The man on the porch, along with the two others, pushed their way into the residence. One man said all Ms Hudson had to do was to tell them where the money was, and they would be gone. Ms. Hudson replied that she did not have any money, and pleaded with them not to harm her children. One of the men told her to shut up. Ms. Hudson subsequently identified Defendant as the one who told her to shut up. Ms. Hudson testified that the men tore up her residence. The men told her and the children to go to the back of the shotgun residence. In doing so, Ms. Hudson accidentally bumped into the defendant, who told her never to do that again. She and her children were made to lie down on the bathroom floor, and she was told by one or more gunmen not to call police, threatening that he knew where she lived, where she worked, and where her mother lived. Ms. Hudson said that after the incident she was so frightened that she lived with her mother for three months. At trial, Ms. Hudson identified the photographic lineup shown to her by Det. Brazley, as well as the photograph of the defendant she previously identified.

Ms. Hudson stated on cross examination that the defendant was not the individual who was at her door when she opened it. She said she saw the

defendant going through her things in the second room of the residence. Ms.
Hudson testified on redirect examination that the men took some costume jewelry
and sixty dollars from her dresser.

State v. Marshall, 774 So.2d 244, 247-48 (La. App. 4th Cir. 2000); State Record Volume

2 of 4, Louisiana Fourth Circuit Opinion, 99-KA-2176, August 30, 2000.

Marshall was tried before a jury on July 15, 1998, and found guilty as charged.[4]

The state trial court later sentenced Marshall on November 25, 1998, as a second felony

offender to 49½ years in prison without benefit of parole, probation or suspension of

sentence.[5] The trial court also denied Marshall's motion for post-verdict judgment of

acquittal and motion to reconsider the sentence.[6]

On appeal to the Louisiana Fourth Circuit, Marshall's appointed counsel asserted

that counsel was ineffective for allowing the jury to hear the hearsay testimony of

Detective Brazley regarding an anonymous tip.[7]   Marshall also filed five pro se

assignments of error:[8] (1) The state trial court erred in admitting the hearsay testimony

---

[4]St. Rec. Vol. 1 of 4, Trial Minutes (2 pages), 7/15/98; Jury Verdict, 7/15/98; St. Rec. Vol. 2 of
4, Trial Transcript, 7/15/98.

[5]St. Rec. Vol. 1 of 4, Sentencing Minutes, 11/25/98; Multiple Bill Hearing Minutes, 11/13/98;
Multiple Bill, 7/23/98; Minute Entry, 7/23/98; St. Rec. Vol. 2 of 4, Sentencing Transcript, p. 1-2,
11/25/98; Multiple Bill Hearing Transcript, pp. 7-8, 11/13/98.

[6]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 11/13/98; Motion to Reconsider Sentence
(undated); St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, pp. 7-8, 11/13/98.

[7]St. Rec. Vol. 2 of 4, Appeal Brief, 99-KA-2176, 9/20/99.

[8]St. Rec. Vol. 2 of 4, Pro Se Supplemental Appeal Brief, 99-KA-2176, 11/8/99; Amended Brief,
99-KA-2176, 3/27/00; Pro Se Supplemental Brief, 99-KA-2176, 5/3/00; Pro Se Reply Brief, 99-KA-
2176, 7/28/00.

3

of Detective Brazley. (2) Counsel was ineffective for allowing the hearsay testimony of Detective Brazley regarding an anonymous tip. (3) The state trial court erred in denying his motion to dismiss or substitute counsel without a hearing. (4) The evidence was insufficient to support the conviction. (5) The guilty plea in the predicate offense to the multiple bill was unconstitutional.

The Louisiana Fourth Circuit affirmed the conviction on August 30, 2000, finding that Marshall's first pro se argument was barred from review for lack of a contemporaneous objection and that the others were without merit.[9]  Marshall's pro se request for rehearing was denied on September 29, 2000.[10]

The Louisiana Supreme Court denied Marshall's pro se writ application without stated reasons on October 26, 2001.[11]  Marshall's conviction became final ninety (90) days later, on January 24, 2002, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[9]Marshall, 774 So.2d at 244; St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 99-KA-2176, 8/30/00.

[10]St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 99-KA-2176, p. 16, 8/30/00; St. Rec. Vol. 2 of 4, Motion for Rehearing, 9/11/00.

[11]State v. Marshall, 799 So.2d 1149 (La. 2001); St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2000-KO-3038, 10/26/01; La. S. Ct. Writ Application, 00-KO-3038, 11/3/00 (dated 10/23/00); St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2000-KO-3038, 11/3/00.

Several months later, Marshall submitted an application for post-conviction relief to the state trial court asserting nine grounds for relief:[12] (1) Counsel was ineffective because he did not inform petitioner of the consequences of rejecting the State's plea offer of 10 years in prison. (2) Counsel was ineffective on direct appeal. (3) Trial counsel was ineffective by allowing prejudicial hearsay evidence at trial. (4) A conflict existed with counsel during pretrial proceedings and trial. (5) Counsel was ineffective because he failed to investigate, interview and secure important witnesses. (6) Counsel was ineffective because he failed to investigate and find documentary evidence to determine whether the anonymous phone call actually occurred. (7) Counsel was ineffective because he did not familiarize himself with pretrial transcripts to impeach the State's witnesses with prior inconsistent statements. (8) Counsel was ineffective because he did not investigate and find evidence to impeach the State's witnesses at trial. (9) Counsel was ineffective because he did not move for a continuance to secure the attendance of witnesses and complete preparation for trial. The trial court denied the application without stated reasons by judgment issued on August 9, 2002.[13]

The Louisiana Fourth Circuit denied Marshall's subsequent writ application on November 8, 2002, finding no error in the trial court's judgment denying relief or in its

---

[12]St. Rec. Vol. 3 of 4, Application for Post Conviction Relief, dated 8/27/02. This petition is a copy submitted with Marshall's later filed appellate writ application.

[13]St. Rec. Vol. 3 of 4, Trial Court Judgment, 8/9/02.

failure to conduct an evidentiary hearing on the post-conviction application.[14]  The Louisiana Supreme Court denied Marshall's related writ application without reasons on December 12, 2003.[15]

Almost seven years later, on July 6, 2010, Marshall appearing through counsel filed an application for post-conviction relief in the state trial court asserting that new evidence would have raised reasonable doubt as to the verdict and his innocence and that trial counsel failed to inform Marshall of a possible plea offer.[16]  During the next four years, the state trial court received additional briefing from Marshall's counsel and the State, and Marshall's counsel filed a motion requesting that his multiple offender proceedings be reopened based on the allegation that the predicate offense was not final when it was used in the multiple bill.[17]

On June 18, 2014, the state trial court denied the new evidence claim as speculative and procedurally improper for post-conviction review under La. Code Crim.

---

[14]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2002-K-1769, 11/8/02; 4th Cir. Writ Application, 2002-K-1769, 8/30/02.

[15]State ex rel. Marshall v. State, 860 So.2d 1146 (La. 2003); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2002-KH-3150, 12/12/03; La. S. Ct. Writ Application, 02-KH-3150, 12/20/02; St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2002-KH-3150, 12/20/02.

[16]St. Rec. Vol. 4 of 4, Application for Post-Conviction Relief, 7/6/10.  In spite of the file stamp date, the state trial court's judgment reflects that this application was received by the court on September 13, 2010.  St. Rec. Vol. 4 of 4, Trial Court Judgment, 6/18/14.

[17]St. Rec. Vol. 4 of 4, State's Objection, 2011; Supplemental Memorandum in Support, 2011; Rebuttal to State's Objection, 2011; Supplement to Application for Post-Conviction Relief, 3/3/13; Rebuttal to State's Objection, 2013; Memorandum in Support, 4/7/14; Motion to Reopen Habitual Offender Proceedings, 4/7/14 (date in state trial court judgment); Memorandum in Support, 4/7/14; State's Supplemental Objections, 5/5/14.

P. art. 930.3.[18]  The court denied relief on the ineffective assistance of counsel claims as speculative and for seeking untimely post-conviction review pursuant to La. Code Crim. P. art. 930.8.  The court also denied the request to reopen the multiple offender hearing as untimely.

On September 11, 2014, the Louisiana Fourth Circuit denied in part Marshall's counsel-filed writ application on the actual innocence claim and denial of the motion to reopen the habitual offender proceeding.[19]  However, the appellate court granted the writ in part, finding error in the denial of the ineffective assistance of counsel claims on procedural grounds and ordered the state trial court to hold an evidentiary hearing on that issue and grant Marshall leave to subpoena other relevant documents.

The state court records produced by the State do not include any subsequent pleadings or court orders beyond that date.  Independent research by my staff, however, has determined that Marshall currently has two counsel-filed writ applications pending in the Louisiana Supreme Court related to the 2014 post-conviction rulings of the state trial court and the Louisiana Fourth Circuit.[20]

_____

[18]St. Rec. Vol. 4 of 4, Trial Court Judgment, 6/18/14; Minute Entry, 6/18/14.

[19]St. Rec. Vol. 4 of 4, 4th Cir. Order, 2014-K-0763, 9/11/14; 4th Cir. Writ Application, 2014-K-0763, 7/23/14; Supplemental Writ Application, 2014-K-0763, 8/5/14.

[20]On January 15, 2015, a member of my staff contacted the office of the clerk of the Louisiana Supreme Court and was advised that Marshall's two pending writ applications are 2014-KP-2091 and 2014-KP-2096.  I have not obtained copies of these applications because, those writ applications are not relevant where Marshall has not raised the hard-labor issue among his current state post-conviction claims and has not exhausted review of his administrative challenge to his hard-labor sentence.

The pleadings attached to Marshall's petition reflect, as he contends, that he filed an administrative grievance complaint with Rayburn officials challenging his placement in a Louisiana Department of Corrections ("DOC") facility to serve his sentence at hard labor.  He argued that, in 1998, the multiple offender provisions did not require that his sentence be served at hard labor.  Rayburn Warden Robert Tanner denied the first-step grievance procedure response on October 22, 2013, finding that Marshall's felony conviction and sentence as a multiple offender required that he serve his sentence at hard labor.[21]

Marshall's second-step grievance procedure appeal of that ruling was addressed by the office of the Secretary of the Department of Corrections on January 30, 2014.[22] That appeal was denied on the basis that, at the time of Marshall's multiple offender sentencing, it was contingent on the hard labor sentence of the underlying charge.  My research has located no indication that Marshall did not seek further review of these administrative rulings.[23]

---

[21]Rec. Doc. No. 3, p. 20.

[22]Rec. Doc. No. 3, p. 19.

[23]On February 2, 2015, a member of my staff contacted the offices of the Clerks for the Louisiana Supreme Court, the Louisiana First Circuit Court of Appeal and the 19th Judicial District Court in East Baton Rouge Parish and was advised that Marshall has not filed any pleadings in these courts related to this administrative grievance proceeding.

II.  <u>FEDERAL PETITION</u>

In his current Section 2241 petition, Marshall alleges that his substantive due process rights and his right against ex post facto application of the law are being violated because the DOC is unlawfully requiring him to serve his sentence at hard labor in a DOC facility instead of without hard labor in a parish prison facility.  He asserts that the habitual offender laws in place at the time of his sentencing did not mandate a hard labor sentence.  He contends that Louisiana law in that regard was not changed to provide a hard labor sentence for habitual offenders until 2010, when La. Rev. Stat. § 15:529.1(G) was amended to provide the hard labor designation.  He argues that it is unlawful for the DOC to apply the 2010 amendment retroactively to his sentence imposed in 1998.

The State filed a response in opposition, addressing Marshall's petition as if it had been filed pursuant to 28 U.S.C. § 2254.  In doing so,  the State contends that the petition is a prohibited second or successive petition for which Marshall has not obtained authorization to file from the circuit court and is otherwise untimely filed.

For the following reasons, I find that this court has jurisdiction to consider Marshall's petition challenging the execution of his sentence under the provisions of Section 2241, which is not subject to the gatekeeping restrictions on successive and untimely petitions otherwise applicable to Section 2254 petitions.  However, the petition must be dismissed without prejudice because Marshall has failed to exhaust required state remedies.

III.    JURISDICTION UNDER 28 U.S.C. § 2241

A.    VENUE AND JURISDICTION

A petition for writ of habeas corpus which "attacks the manner in which a sentence is carried out or the prison authorities' determination of its duration" is properly considered under the general habeas authority of 28 U.S.C. § 2241. Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000); Frees v. Maye, 441 F. App'x 285, 286 (5th Cir. 2011); Stewart v. Cain, 71 F.3d 879, 1995 WL 727244, at *1 (5th Cir. 1995) (Table, Text in Westlaw); see also, Lee v. Wetzel, 244 F.3d 370, 373 n.3 (5th Cir. 2001); Tolliver v. Dobre, 211 F.3d 876, 877 (5th Cir. 2000). Under Section 2241(d), a convicted state prisoner, like Marshall, who is in custody under the judgment of a state court in a state like Louisiana with multiple federal districts may file a federal habeas corpus petition either in the district where he is confined or where he was convicted. Wadsworth v. Johnson, 235 F.3d 959, 960-61 (5th Cir. 2000).

In Section 2241(d) cases, federal courts have ordinarily held that the most appropriate venue for challenges to the execution or implementation of the sentence is the district court for the district where the petitioner is in custody, and challenges to the legality of the conviction or sentence are better heard in the district court for the district where the state conviction and sentencing occurred. Story v. Collins, 920 F.2d 1247, 1250-51 (5th Cir. 1991); see Pack, 218 F.3d at 451 (a Section 2241 petition challenging the execution of a sentence "must be filed in the same district where the prisoner is

incarcerated."); <u>Frees</u>, 441 F. App'x at 286 (same). The United States Court of Appeals for the Fifth Circuit has explained the basis for the choice of venue as one of convenience:

> Under 28 U.S.C. § 2241(d), state convicts may file federal habeas corpus petitions in the district where they are confined or where they were convicted. The purpose of this, of course, is to provide a more convenient forum for witnesses. ... Section 2241(d) militates in favor of filing the applicant's petition in ... the division where the witnesses are located, rather than in ... the division in which the applicant is confined.

<u>Mitchell v. Henderson</u>, 432 F.2d 435, 436 (5th Cir. 1970) (citation omitted).

In the instant case, Marshall was convicted within this district in 1998 and is currently confined in a DOC facility within this district. Thus, this court has jurisdiction to consider Marshall's Section 2241 petitions. <u>Accord</u> <u>Carmona v. Andrews</u>, 357 F.3d 535 (5th Cir. 2004) (addressing venue for a Section 2254 petition challenging parole revocation by the Louisiana Board of Parole).

## B.   SUCCESSIVENESS AND JURISDICTION

In addressing jurisdiction, I recognize that Marshall has previously filed a petition in this court under 28 U.S.C. § 2254 challenging the constitutionality of his conviction. He filed his first Section 2254 petition in 2004, <u>Marshall v. Cain</u>, C. A. No. 04-219"A"(2). In that petition, he alleged that the evidence was insufficient to support his conviction, counsel provided ineffective assistance before and during trial, the trial court erred by denying his motion to dismiss counsel and the trial court violated his right to confront witnesses. By judgment entered August 18, 2006, the petition was dismissed

with prejudice as meritless.[24]  The Fifth Circuit affirmed the judgment September 14, 2007.[25]

Pursuant to 28 U.S.C. § 2244(a), a district court lacks jurisdiction to consider a second or successive application or petition, unless the circuit court of appeals first grants the petitioner authorization to file the petition.  See 28 U.S.C. §2244(b)(3)(A); Hooker v. Sivley, 187 F.3d 680, 682 (5th Cir. 1999).  In considering the successiveness of Section 2241 petitions, the Fifth Circuit has made the following observations:

> The specific limitations on filing successive 28 U.S.C. § 2255 motions and 28 U.S.C. § 2254 habeas petitions that were enacted as 28 U.S.C. § 2244(b) under the AEDPA do not literally apply to 28 U.S.C. § 2241 habeas petitions.  See Zayas v. INS, 311 F.3d 247, 256-57 (3d Cir. 2002).  However, this court has held that the version of 28 U.S.C. § 2244(a) that was in effect prior to enactment of the AEDPA bars successive 28 U.S.C. § 2241 petitions that are based on the same claim. See United States v. Tubwell, 37 F.3d 175, 177-78 (5th Cir. 1994).  Accordingly, the present version of 28 U.S.C. § 2244(a), which is very similar, applies to [§2241] case[s].

Ortloff v. Fleming, 88 F. App'x 715, 716 (5th Cir. 2004) (emphasis added); accord Davidson v. U.S. Dep't of Just., 239 F.3d 366, 2000 WL 1741633, at *1 (5th Cir. 2000) (Table, Text in Westlaw); see Williams v. Tamez, 466 F. App'x 326, 327 (5th Cir. 2012) (affirming dismissal of successive Section 2241 petition as abuse of the writ, citing current 28 U.S.C. § 2244(a)); Jennings v. Menifee, 214 F. App'x 406, 407 (5th Cir. 2007) (same).

---

[24]C. A. No. 04-219"A"(2), Rec. Doc. No. 28.

[25]C. A. No. 04-219"A"(2), Rec. Doc. No. 35.

In this case, Marshall has <u>not</u> asserted the instant claims based on the 2010 change in Louisiana law in a prior federal habeas petition under either Section 2254 or Section 2241.  Under the standards recognized above, this petition would not be an abuse of the writ, or a second or successive filing under Section 2244, that would require Marshall first to seek authorization from the Fifth Circuit.  Thus, this court has jurisdiction to consider Marshall's Section 2241 petition, despite his prior filing under Section 2254.

IV.   <u>STATUTE OF LIMITATIONS NOT APPLICABLE</u>

In its response in opposition to Marshall's petition, the State argued that, as a Section 2254 petition, the petition should be dismissed as untimely filed under 28 U.S.C. § 2244(d).  The State's misinterpretation of the nature of this petition as a Section 2254 pleading and its timeliness calculation are erroneous and must be rejected.

First, as discussed above, controlling Fifth Circuit precedent indicates that Marshall's challenge to the execution and implementation of his sentence is appropriately brought under Section 2241.  <u>Frees</u>, 441 F. App'x at 286; <u>Stewart</u>, 1995 WL 727244, at *1; <u>Gibbs v. Cain</u>, No. 12-3004, 2013 WL 3490909, at *1 (E.D. La. Jul. 10, 2013) (Lemelle, J.).  I decline to re-categorize the petition as being brought under Section 2254.

In addition, the AEDPA's one-year statute of limitations period has not been extended to Section 2241 petitions.  <u>United States v. Pipkins</u>, No. 07CR0163, 2012 WL 1019118, at * 1 (E.D. La. Mar. 26, 2012) (Duval, J.) ("However, unlike § 2554 habeas petitions, which are governed by the [AEDPA], § 2241 petitions have no statute of

13

limitations."); <u>Hartfield v. Quarterman</u>, 603 F. Supp.2d 943, 948 (S.D. Tx. 2009);

<u>Williams v. Louisiana's A.G.'s Office</u>, No. 07-603, 2007 WL 2915078, at *3 (E.D. La.

Oct. 4, 2007) (Order adopting report and recommendation).  The AEDPA did not amend

Section 2241 to include a limitations period for filing a petition under that section.

<u>Homayun v. Cravener</u>, 39 F. Supp.2d 837 (S.D. Tx. 1999) (citing <u>Sandoval v. Reno</u>, 166

F.3d 225, 234 (3d Cir. 1999) and <u>Goncalves v. Reno</u>, 144 F.3d 110, 120 (1st Cir. 1998),

<u>cert. denied</u>, 526 U.S. 1004 (1999)).

> The Fifth Circuit cases addressing limitations involve habeas petitions filed
> under either 28 U.S.C. § 2254 or § 2255, not petitions for relief under §
> 2241. It appears, therefore, that petitioners relying on § 2241 are not
> subject to the one-year limitations period set forth in other provisions of the
> AEDPA.

<u>Homayun</u>, 39 F. Supp.2d at 841.

In the absence of controlling Fifth Circuit authority clearly indicating that the one-

year AEDPA statute of limitations applies to Section 2241 petitions, I will not do so.  For

the foregoing reasons, the State's limitations defense is rejected.

V.     <u>EXHAUSTION OF  STATE REQUIRED REMEDIES</u>

Marshall's pleadings and the record reflect that Marshall has not presented his due

process and ex post facto claims to any state court and has not completed other required

state remedies before filing this federal petition.  I therefore find sua sponte that

Marshall's petition should be dismissed without prejudice for failure to exhaust state

court remedies.  Accordingly, **petitioner is hereby specifically instructed that this**

**report and recommendation is notice to him that this court is addressing the issue of failure to exhaust state court remedies and that petitioner must submit any evidence or argument concerning exhaustion as part of any objections he may file to this report**.  See Kurtzemann v. Quarterman, 306 F. App'x 205, 206 (5th Cir. 2009) (district court may sua sponte raise failure to exhaust, and notice of and an opportunity to respond to the exhaustion issue must be given) (citing Day v. McDonough, 547 U.S. 198, 209-10 (2006) (addressing limitations) and Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)).

Although there is no reference to an exhaustion requirement in the statutory language of 28 U.S.C. § 2241(c), a federal court should abstain from the exercise of its habeas jurisdiction if the issues raised in a petition may be resolved on the merits in the state courts or by some other state procedure available to the petitioner.  Dickerson v. Louisiana, 816 F.2d 220, 225 (5th Cir. 1987); Edge v. Stalder, 83 F. App'x 648, 2003 WL 22976091, at *1 (5th Cir. 2003); Greer v. St. Tammany Parish Jail, 693 F. Supp. 502, 508 (E.D. La. 1988); see also Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 489-92 (1973).  The exhaustion doctrine is applied to Section 2241(c) as a matter of comity and is based on federalism grounds to protect the state courts' important independent jurisdictional opportunity to address and initially resolve any constitutional issues arising within their jurisdiction and to limit federal interference in the state adjudicatory process. Dickerson, 816 F.2d at 225.

Generally, the exhaustion requirement is satisfied only when <u>all</u> grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner. <u>Mercadel v. Cain</u>, 179 F.3d 271, 275 (5th Cir. 1999); <u>Dupuy v. Butler</u>, 837 F.2d 699, 702 (5th Cir. 1988). In Section 2241 cases, this exhaustion requirement is obviated only if "special circumstances" exist. <u>Dickerson</u>, 816 F.2d at 225 (citing <u>Braden</u>, 410 U.S. at 489); <u>Tooten v. Shevin</u>, 493 F.2d 173, 177 (5th Cir. 1975).

To exhaust his claims in the state courts, Marshall must fairly present the same claims and legal theories he urges in this federal court to the state courts through the Louisiana Supreme Court in a procedurally proper manner and provide the state courts with an opportunity to address those claims. Louisiana law requires that an appropriate post-conviction claim must be brought in an application for post-conviction relief filed in the state district court. La. Code Crim. P. arts. 925 and 930.3. The petitioner may then seek supervisory review in the appellate court, La. Code Crim. P. art. 930.6, and discretionary review in the Louisiana Supreme Court, La. S. Ct. Rule X§5.

I have reviewed Marshall's state applications for post-conviction relief and related writ applications, and I see no submission in which he has presented his due process and ex post facto claims to any Louisiana state court. He therefore has neither pursued nor exhausted available state court remedies on the due process and ex post facto issues asserted in his current federal petition.

In addition, the record does not reflect, and Marshall has not alleged, that he has exhausted administrative review of this claim under Louisiana's Corrections Administrative Remedy Procedure ("CARP"), La. Rev. Stat. § 15:1171 et seq., and the subsequent supervisory review of that procedure by the state courts pursuant to La. Rev. Stat. § 15:571.15.[26]  Under Louisiana's CARP procedures, an inmate must fully utilize the administrative procedure established by the DOC, or any facility in which he his housed, to resolve any claims related to his confinement, including "time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes."  La. Rev. Stat. § 15:1171(B).  Upon completion of the administrative process, an inmate may seek judicial review by filing suit in the appropriate state district court. La. Rev. Stat. § 15:1177.  The provisions of La. Rev. Stat. § 15:571.15 require that any such suit against the DOC challenging the computation of an inmate's "sentence or sentences, discharge, . . . or any action concerning parole" must first be brought in the 19th Judicial District Court in East Baton Rouge Parish.

Marshall has provided copies of his efforts to obtain administrative review at the prison and DOC headquarters.  As noted previously, however, my research and the state court records before me do not indicate that Marshall has filed an action with the 19th Judicial District or that he has proceeded from that court to the Louisiana First Circuit

---

[26]Madison v. Ward, 825 So.2d 1245 (La. App. 1st Cir. 2002).

or the Louisiana Supreme Court.[27]   Thus, Marshall has not pursued or completed state court review of the administrative procedure as required by Louisiana law, and Marshall's Section 2241 petition should be dismissed without prejudice for failure to exhaust state court and administrative remedies.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Ronald Marshall's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2241 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust required state remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

---

[27]As previously noted, this was confirmed by a member of my staff on February 2, 2015.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[28]

New Orleans, Louisiana, this _____2nd___ day of February, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[28]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.